[Cite as *State v. Milenius*, 2014-Ohio-3585.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100407**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## EFRAIN MILENIUS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-12-568882

**BEFORE:** Keough, J., Rocco, P.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** August 21, 2014

**ATTORNEY FOR APPELLANT**

Thomas A. Rein
Leader Building, Suite 940
526 Superior Avenue
Cleveland, Ohio 44114

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Blaise D. Thomas
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, J.:

{¶1} Defendant-appellant Efrain Milenius appeals from the trial court's judgment that ordered him to pay $9,947 in restitution to the victim of his offenses. For the reasons that follow, we affirm.

## I. Background

{¶2} Milenius was indicted in a multi-count indictment for kidnapping, attempted rape, felonious assault, and gross sexual imposition. After a plea agreement with the state, he pled guilty to gross sexual imposition and attempted felonious assault. The trial court referred him for a presentence investigation report and set the matter for sentencing.

{¶3} The prosecutor and defense counsel spoke at the sentencing hearing. Defense counsel informed the court that Milenius had always held a job and that his current boss would be willing to hire him back if he were available. Later, counsel reiterated that if Milenius were returned to the community, he had "employment that's available to him in a fairly rapid way."

{¶4} In addition, the victim gave a statement. When the state asked if she was seeking restitution, the victim stated that she owed $22,000 in medical expenses and gave a copy of the bill to the judge. She told the judge that "all my heart issues, my panic attacks, everything" occurred after the incident involving Milenius and were caused by anxiety related to the incident.

{¶5} When the sentencing hearing resumed approximately one month later, the victim again spoke to court. She said that she had developed several health conditions after the incident, including high blood pressure and panic attacks. She said that she had called 911 several times as a result of her panic attacks and was hospitalized three or four times due to her conditions.

{¶6} The prosecutor provided medical bills totaling $22,451.95 to the court. The prosecutor confirmed with the victim that the emergency charges incurred as a result of the incident, which happened on October 30, 2012, totaled $4,345.25. The prosecutor then reviewed bills totaling over $11,000 for the victim's hospitalizations and medical treatment in March and April 2013. The victim stated that these expenses were due to her anxiety, high blood pressure, and heart issues following Milenius's attempted assault.

{¶7} During this hearing, counsel for Milenius again informed the court that the job Milenius had when he was arrested was available to him if he was "allowed to return to the community," so "he can expect full employment." And in his statement to the court, Milenius advised the judge that "I do have a job available to me, I can go to work five days a week and provide for my kids."

{¶8} The trial court sentenced Milenius to community control, imposed a $500 fine, and ordered him to pay court costs. In addition, the court ordered Milenius to pay $9,947 in restitution, stating, "you have a job, I find that you're not indigent, even though I know you're currently incarcerated, but you'll have the ability to pay that." This appeal followed.

## II. Analysis

**{¶9}** In his first assignment of error, Milenius argues that the amount of restitution ordered by the trial court exceeded the economic loss suffered by the victim. In his second assignment of error, Milenius argues that the trial court did not hold a "proper hearing" to determine the amount of restitution, and did not determine his present or future ability to pay. We consider these assigned errors together because they are related.

**{¶10}** We review a lower court's order of restitution for an abuse of discretion. *State v. Marbury*, 104 Ohio App.3d 179, 661 N.E.2d 271 (8th Dist.1995). "'The term 'abuse of discretion' is one of art, 'connoting judgment exercised by a court, which does not comport with reason or the record.'" *State v. Blalock*, 8th Dist. Cuyahoga No. 100194, 2014-Ohio-934, ¶ 44, quoting *State v. Alexander*, 11th Dist. Trumbull No. 2011-T-0120, 2012-Ohio-4468, ¶ 10.

> R.C. 2929.18(A) allows a sentencing court, as part of a sentence, to impose "restitution by the offender to the victim of the offender's crime * * * in an amount based on the victim's economic loss." R.C. 2929.01(L) defines "economic loss" as "any economic detriment suffered by the victim as a result of the commission of a felony and includes any * * * medical cost * * * incurred as a result of the commission of the felony.
>
> Prior to ordering restitution however, a sentencing court must engage in a "due process ascertainment that the amount of restitution bears a reasonable relationship to the loss suffered." *State v. Borders*, 12th Dist. Clermont No. CA2004-12-101, 2005-Ohio-4339, quoting *Marbury*, 104 Ohio App.3d 179, 661 N.E.2d 271. "The amount of restitution must be supported by competent, credible evidence from which the court can discern the amount of restitution to a reasonable degree of certainty." *State v. Gears*, 135 Ohio App.3d 297, 300, 733 N.E.2d 683 (6th Dist.1999).

*State v. Roberts*, 8th Dist. Cuyahoga No. 99755, 2014-Ohio-115, ¶ 7-8.

**{¶11}**   Under R.C. 2929.16(B)(5), when imposing financial sanctions under R.C. 2929.18, a trial court must consider an offender's present and future ability to pay. However, a court need not conduct a separate hearing to ascertain the reasonableness of restitution if there is enough evidence in the record to substantiate the relationship of the offender's criminal conduct to the amount of the victim's loss.  *Roberts* at ¶ 10, citing *State v. Brumback*, 109 Ohio App.3d 65, 83, 671 N.E.2d 1064 (9th Dist.1996).

**{¶12}**   Here, the trial court essentially held a hearing on restitution during the sentencing hearing.   The court heard statements from the prosecutor, defense counsel, the victim, and Milenius.   The prosecutor provided itemized medical bills to the court and reviewed the bills and amounts of the bills with the victim, who stated that the bills were for treatment for anxiety and heart issues that developed as a result of Milenius's attempted assault.   In response to the trial court's questioning, the victim confirmed that she did not have any heart conditions prior to the assault.   Both defense counsel and Milenius informed the court that Milenius had a full-time job waiting for him if he were sentenced to community control.

**{¶13}** On this record, the trial court did not abuse its discretion in ordering Milenius to pay $9,947 in restitution.   The evidence demonstrated that the emergency room expenses directly resulting from Milenius's attempted assault were $4,345.25.   The evidence demonstrated further that the victim had incurred over $11,000 in other

expenses due to panic attacks and heart conditions that developed after the assault as a result of the incident. The trial court considered the evidence and calculated that $9,947 in medical expenses were incurred as a result of Milenius's actions. The documentary and testimonial evidence supports this determination. Contrary to Milenius's argument, the amount of restitution ordered did not exceed the economic loss suffered by the victim. Furthermore, the evidence demonstrated that the medical expenses incurred by the victim were a direct and proximate result of Milenius's assault. *See State v. Lalain*, 136 Ohio St.3d 248, 2013-Ohio-3093, 994 N.E.2d 423, ¶ 27 (amount of restitution ordered cannot be greater than the amount of economic loss suffered as a direct and proximate result of the commission of the offense).

{¶14} Moreover, the record demonstrates that the trial court considered Milenius's present and future ability to pay the restitution. Both defense counsel and Milenius advised the judge that Milenius had a full-time job waiting for him if he were sentenced to community control. The record reflects that in light of their advisements, the trial court specifically found that Milenius was not indigent, had a job, and could pay the restitution.

{¶15} We find no abuse of discretion in the trial court's order of restitution. The testimony and documentary evidence demonstrate that the amount ordered bears a reasonable relationship to the losses suffered, and the trial court considered Milenius's ability to pay the sanction before ordering restitution. Accordingly, the first and second assignments of error are overruled.

**{¶16}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KATHLEEN ANN KEOUGH, JUDGE

KENNETH A. ROCCO, P.J., CONCURS;
MELODY J. STEWART, J., DISSENTS (SEE ATTACHED DISSENTING OPINION.)

MELODY J. STEWART, J., DISSENTING:

**{¶17}** I would sustain the second assignment of error in this case and remand the matter to the trial court for a determination of Milenius's present or future ability to pay, and if the trial court properly determines that he is able to make restitution, then to determine the appropriate amount based on the victim's economic loss. Although I agree with the majority that the trial court did not have to conduct a separate hearing on the issue of restitution and that the amount of restitution ordered need only bear a

reasonable relationship to the economic loss suffered by the victim, I do not believe that the trial court fulfilled its obligations when ordering restitution in this case.

{¶18}   R.C. 2929.19(B)(5) states:  "Before imposing a financial sanction under 2929.18 of the Revised Code or a fine under section 2929.32 of the Revised Code, the court shall consider the offender's present and future ability to pay the amount of the sanction or fine."   When considering an offender's ability to pay, the trial court is not required to hold a hearing, but it may choose to do so pursuant to R.C. 2929.18(E).  *See State v. Bemmes*, 1st Dist. Hamilton No. C-010522, 2002-Ohio-1905.  The trial court need not consider any express factors or make any specific findings, but there must be some evidence in the record that the court at least considered the offender's present and future ability to pay.  *Id.* at *6.  This consideration did not take place prior to the court's ordering restitution.

{¶19} At sentencing, Milenius addressed the court.  He apologized to the victim and expressed to the court how he was taking responsibility for his actions.  He told the court, "I do have a job available to me, I can go to work five days a week and provide for my kids."  Tr. 109.  The state argues that this amounted to a concession that Milenius had the ability to pay restitution and the majority agrees.  Both the state and the majority also point to the following statement by the court as demonstrating that the court considered Milenius's ability to make restitution.  The court stated:

> I'm going to impose a $500 fine, order you to pay court costs.  You have a
> job, I find that you're not indigent, even though I know you're currently
> incarcerated, but you'll have the ability to pay that.  I'll let you know that

you can do court community work service in lieu of costs if you are unable to pay the court costs and you'll be able to do that with the home monitoring.

Tr. 113.

**{¶20}** First, the court's order here relates only to court costs, not restitution. When it said that "you'll have the ability to pay that," the "that" it referred to was court costs. Restitution was imposed after these statements were made, so the conclusion that the court found that Milenius had the ability to pay restitution is unfounded.

**{¶21}** Second, it is difficult to say that the court found that Milenius had the ability to pay $9,947 in restitution when it offered him the opportunity to do court community work to pay off court costs in the event he could not afford to pay those costs. The court costs were presumably far less than the restitution amount, so it is unclear why the court would give Milenius the option of working off court costs due to an inability to pay, yet expect him to make nearly $10,000 in restitution.

**{¶22}** As the majority noted, an order to pay restitution is committed to the sound discretion of the court, *State v. Burns*, 8th Dist. Cuyahoga No. 95465, 2011-Ohio-4230, ¶ 37, however, this order appears arbitrary because the court only found that Milenius had the ability to pay court costs — not restitution. The abuse of discretion becomes more pronounced given that the court understood that Milenius might not have the ability to pay court costs that are presumably less than the restitution order.

**{¶23}** In addition to the above analysis, there were questions regarding the total amount claimed by the victim, whether her health insurance paid for her treatment, and

whether all of her medical bills were related to the crimes. If the victim's medical insurance paid for any of the expenses submitted to the court, those amounts could not be the subject of restitution.

{¶24} Evidence relating to injuries suffered on the day of the crime was submitted in the form of a bill for $4,345.25 dated October 30, 2012. The state also showed the court medical bills from April 2013 in the following amounts:

| | |
|---|---|
| March 28, 2013 | $699 (office consult with cardiologist) |
| April 9, 2013: | $76 |
| April 9, 2013: | $310 (office visit) |
| April 11, 2013: | $4,692 (high blood pressure) |
| April 11, 2013: | $127 (limited Doppler) |
| April 11, 2013: | $116 (color Doppler) |
| April 11, 2013: | $1051 (stress test) |

{¶25} These medical bills were incurred approximately six months after the crimes, so there is an issue as to whether those expenses were properly considered in the restitution order. The court did not engage in an analysis to determine whether the expenses were proximately caused by Milenius's conduct. That was error.

{¶26} In addition, even if these expenses were properly attributable to Milenius, the numbers do not add up to what the court ordered as restitution. The bills totaled $14,416, yet the court ordered restitution in the amount of $9,947. There is nothing in the record to show any basis for the court's final total.

**{¶27}** For these reasons, I respectfully dissent.